and you are excused. And I want to call the next case. That is United States v. Porter, No. 221134. Good morning, Your Honors, and may it please the Court. My name is Kathleen Shen and I represent the appellate, Mr. Aaron Porter. Officer Lopez had a hunch that Mr. Porter's backpack contained evidence of the crime, and so he searched it without a warrant. Contrary to the conclusion reached by the District Court, that warrantless search violated the Fourth Amendment. The District Court gave two reasons for denying the motion to suppress, abandonment and inevitable discovery, and both were wrong. I'll begin with abandonment. So this Court has held that an individual loses any objectively reasonable expectation of privacy in an object when he clearly and unambiguously disclaims ownership of it. So if a cop asks, does this bag belong to you, or is this yours, and you say no, then you have disclaimed ownership and lost your privacy interest in the bag. This is the objective prong you're talking about now. If you objectively present that to an officer from the officer's point of view, then that satisfies the test of abandonment. If you objectively say something that, to the officer's perspective, would indicate you don't have claim to that backpack, that's the end of the inquiry. Yes, Your Honor. And so, but that's not what happened here. So here, Officer Lopez, he didn't ask Mr. Porter whether he owned a backpack or whether this backpack belonged to him. He asked Mr. Porter if he had a backpack that he wanted to take back to the police station. And so when Mr. Porter responded by saying he didn't have a backpack, he was saying he didn't have a backpack he wanted to take back to the police station. And at a minimum, that's not a clear and unambiguous disclaimer of ownership. Counsel, I just can't believe you said that. Sure, I understand your concern, Your Honor. I didn't have a backpack. I don't have a backpack at all. You didn't say you don't have a backpack. I didn't mean that. I just didn't want to take it with me when I was arrested. So, Your Honor, let me respond with an example. If my co-workers and I are going to a happy hour and somebody says, hey, Katie, is there anything that you want to take to the bar with you? And I say, no, I don't have anything. I don't think it would be reasonable based on what I said for the co-worker to then go back to my office and take a purse there because I just don't think it's a reasonable or, at minimum, not a clear and unambiguous statement that anything that is in my office doesn't belong to me. And I think that the context of this conversation is really critical. Officer Lopez knows that this is a conversation about what we're taking back to the police station. He's not coming into this statement sort of just at the end of it  He knows that Aaron Porter is responding to his own question about what he wants to take back to the police station. Well, wait a minute now. He asked him, what about the backpack? I watched you walk in. And he responded, I didn't have a backpack. Now, where is that ambiguous? I think it's ambiguous because the only thing that question could mean is, do you want to take that backpack I saw you walk in with? No. All the question means is, did you have a backpack? I disagree, Your Honor. I think literally the question, what about the backpack I saw you walk in with? That question doesn't have any context. I didn't have a backpack. Now, where is that ambiguous? That was the question. I didn't have any personal belongings. Where is that ambiguous? So to go back to the statement, I don't have any personal belongings, I think it would be absurd to interpret that as a statement. I literally have no personal belongings. If the district court, you know, if you take this view that you can just look at this statement in isolation and say, well, he says he doesn't have any personal belongings, so I guess nothing that he walked in with belongs to him. He owns nothing in this world. That would not be an objectively reasonable interpretation of what Mr. Porter said. And that's because we know what we're talking about is, what does he want to take back to the police station with him? And again, just to go back to your point, Judge Kelly, I don't think it's clear whether he said, I didn't have a backpack. You know, the judge finds Mr. Porter says he doesn't have a backpack. So I think if Mr. Porter responded, oh, I don't have a backpack, it's not actually clear and ambiguous what he's saying. He could be saying, I don't have a backpack with me to take to the police station, because of course the backpack's in another room. He's been taken into the office to be arrested. And he could be saying, look, I don't have a backpack with me. And at a minimum, it's not clear and unambiguous, which this court has always, you know, the prior cases finding objective abandonment based on the disfavor of ownership, I think are much clearly, much more clearly and unambiguously about ownership in this statement. And I think it's reasonable to require that kind of clarity, because again, I think it's very unusual to find that someone is saying, that's not mine. I don't, that doesn't belong to me. And then treat it as abandoned. And then again, I think it would take a very clear statement for it to be reasonable for someone to go into my purse and rummage around in it because they thought, oh, you said that's not your purse. So it doesn't belong to you anymore. And again, I think, you know, when we're talking about social expectations and what's objectively reasonable, you're looking at the context of the conversation. You're looking at what the cop is talking about, because that's what people, that's how you interpret speech. Again, if somebody asks you on the street, hey, can I have $5? Or can you, can you give me $5? And I say, no, I don't have $5. I'm not literally saying I don't have $5. I'm not saying I don't have $5 in my wallet. If you find $5 in my wallet, that $5 doesn't belong to me so you can take it because it's not mine. What I'm saying is, I don't have $5 to give to you. Because when we respond to a question, implicit in our response is that we don't just repeat the whole question back, right? We're saying, look, I don't, I don't have $5 to give to you. I don't have a backpack that I want to take to the police station. And even if it's not clear, I think it's at a minimum ambiguous or not clear and unambiguous in the same way that a statement, for example, in Mr. Denny's case, the officer says, is this your backpack? Does this backpack belong to you? And Mr. Denny says, no, I think that's much more clear and much more unambiguous. And under those circumstances, treating the bag as abandoned is much more reasonable than the situation here where the officer is basically, you know, he's trying to take advantage of an infelicitous response to a question that he knows is about taking things back to the police station. And again, so for those reasons, because Mr. Porter's statement, when you view it in the conversation of context with Officer Lopez, who was clearly asking Mr. Porter whether he would take the backpack with him back to the police station because he wanted to search it without a warrant. That's not a clear and unambiguous statement of ownership. And I don't think that you can find abandonment here. I also just want to address any questions that you may have. Can I just stop you there? So what do we, what's the standard of review that we apply to the abandonment issue in your view? I mean, I guess you've been arguing DeNovo, but is that your position? Yes, it's DeNovo. That's what this court clearly stated applies to the objective portion of the reasonable expectation of privacy case in Garzon. It says there's two components to reasonable expectation of privacy, subjective, which is a question of fact, and objective, which is a question of law that we review DeNovo. And we rely on that to say, this is a question of law. This court reviews DeNovo. That's consistent with how courts typically review these mixed questions of law and fact in the context of the Fourth Amendment. And I think if you read the Supreme Court cases where they look at whether someone has an objectively reasonable expectation of privacy and an object, they're not expressly saying they're applying DeNovo review, but their review is DeNovo. They're not deferring to the district court's findings, but they're asking this broader policy question of, is it reasonable for, does society treat this information or this property as private? And of course, that's the kind of policy question that I think it makes sense to apply the DeNovo standard review. Would clear error, though, apply to the underlying factual conclusion pertaining to what the defendant actually said? Yes. So, for example, you know, whether this conversation ever happened. And so if I were here on appeal to say, you know, Your Honor, I don't think that that conversation occurred, pointing out that the officer didn't remember it until after the motion to suppress was filed a year after the arrest. That would be a clear error, but we're not challenging the district court's findings that this second conversation that doesn't appear in the police report actually occurred. We're accepting that finding effect for purposes of this appeal and only challenging the district court's determination that based on Mr. Porter's statement in response to Lopez's question, that there was an abandonment under the objective prong of the reasonable expectation of privacy. So you don't challenge the finding or even what he said, the district court's finding with regard to what actually was said. Yes, Your Honor. I mean, the district court, I don't think it's clear precisely what words the district court found. And to be clear, the officer Lopez testified, I think he said something like, or I believe he said. So we know that he said something to the effect of I don't have a backpack. And I think that's what the district court found. Well, the follow-up question though, that I'm wondering if you agree with what I take is the district court's interpretation is he didn't have a back. He said he didn't have a backpack. You're not challenging that part. Yes. I'm not challenging the district court's findings that he said. Mr. Porter said, I'm looking at what the district court's findings were. These are record volume four at page 111 to 112. According to Lopez, Porter said, I don't have a backpack. And I think that wording is a little bit more ambiguous. I think I don't have a backpack. I don't have a backpack to take with me back to the police station. I think if he had said, if the finding were that he had said I didn't have a backpack as judge Kelly suggested, I think that is closer to contradicting Mr. Or officer Lopez's statement. Oh, I saw you walk into a backpack with a backpack. And if Mr. Porter said, oh, I didn't have a backpack. I think that is closer to something that you could say is saying, that's not my backpack. But again, I think in the context of this, this conversation where Lopez is clearly asking Porter, what are you going to take with you back to the police station? And Porter says, I don't have anything. I don't have a backpack. It's at a minimum, not a clear and unequivocal statement that the bag that he left by the workstation does not belong to him. Your Honor, I just want to touch briefly on the inevitable discovery doctrine. You know, many different fourth amendment doctrines were invoked as part of this argument, but I think we can sort of skip to the end and, you know, say that clearly both the district court of the government wind up concluding that after the bag is used for some kind of investigative purpose, it can lawfully be inventory. And I think that's just wrong. Valid inventory presupposes that the item was lawfully in police custody for a non investigative purpose, such as impoundment. And of course there could be no impoundment here. There was no impoundment policy and authorizing the seizure of the bag for an investigative purpose. I think Lopez clearly wanted to look in the backpack for investigative reasons. What about Mr. Williamson? Did he have the authority to surrender that backpack to the officers? The district court didn't find that. And I don't think that provides a basis. I don't think you can find that on the first instance. The district court pointed out reasons why he was reluctant to find that, including that Williamson testified that he wouldn't have looked in the backpack. He didn't suspect it had anything in it. And then the ordinary course of business would have just left it for Mr. White to pick up. And so I don't think it's an appropriate decision here. One thing to say, I would have left it when I went home. But he did eventually tell the officer, OK, you can have the backpack. I'll give you the backpack. Yes, Your Honor. There isn't a finding about whether Williamson had the actual or prepared authority to give that over. And I don't think it's appropriate to reach that for the first time on appeal here for all the reasons I said. I don't think it's clear and dispositive from this record that it's appropriate for this court to affirm on that ground at this point. I'd like to reserve, if there's no further questions, I'd like to reserve my remaining time for rebuttal. You may. Thank you. Please proceed. May it please the court. Kyle Brenton for the United States. I think Judge Kelly's question to opposing counsel was quite apt. I think this case begins and ends with Aaron Porter's statement to the detective, I don't have a backpack. And he did not display an ownership of the backpack just once, but twice in the same line of questioning. He was asked if there were any personal belongings there at the job site he wanted to bring with him. And the response is, he told me he didn't have any personal belongings. So that, I think alone, is probably sufficient to find that he is disclaiming ownership of that backpack. But even if it were not, the second exchange, I believe I asked him, what about the backpack I watched you walk in with? And he responded, he didn't have a backpack. Now in Denny, this court held that it was not aware of a single case in which a disclaimer of ownership in response to a lawful police inquiry did not result in an abandonment of property. This case is no different. I think under any standard of review, whether de novo, clear error, or anything else, when Mr. Porter told the detective, I don't have a backpack, he abandoned his Fourth Amendment interest in it, and therefore lacked standing to challenge the admission of the gun. Now, I think, as we've heard this morning, Porter's only real argument on the merits of abandonment is, when I said I didn't have a backpack, what I really meant was, or what the detective really should have understood me to be saying, was, I don't want to take my backpack with me to the station. Now, he gets there by this argument that, okay, so Lopez's first question was, do you have any belongings you want to bring with you? And so, in order to properly understand the course of the discussion, everything that Porter says in response to that question has to be narrowly and strictly interpreted as a response only to that question. Basically, that that modifier phrase, that you want to bring to the station with you, has to be applied to every single response that he gives. But that's really not the standard here. The standard is, would a reasonable officer have understood him to be abandoning the backpack by his words and actions? And we don't require reasonable officers to follow this kind of very constricted, formalistic reading of these exchanges of what was, in reality, a very plain and straightforward statement from Mr. Porter. I don't have a backpack means I don't have a backpack. Now, if what he had really meant to say was, I want to leave my backpack here, he really could have just said that. He could have said, my girlfriend will come pick it up later. Or, frankly, if the intent had been to get a little closer to some of the hypotheticals in the reply brief that we heard this morning, I mean, he could have just said, no. Do you have any personal longings to bring with you? No. What about the backpack I saw you walk in with? No. That's maybe a harder case, and that's maybe a little closer to some of these hypotheticals that are kind of shorn of meaning. But that's not what he said. What he said was, I don't have a backpack. Detective Lopez took him at his word, as any reasonable officer would have done. Now, I know we have a difference here on the standard of review in the briefing. I don't actually think it makes a difference, a dispositive difference in this case. Obviously, we've gone back and looked at the Jones case, and there's the Benitez-Arnin case in Garza, where there's some difference in how the test is framed and what the standard of review is. I don't think it matters. Well, it only matters if we write a published opinion here that we don't want to perpetrate error or create error about standard of review. So we have to have that clear, I think. Well, I think that if the court wanted to publish this case, I think the court could take the same route that the Juscic case took, which is to say, there is a difference here in these opinions, but because it doesn't matter in this case, because we would affirm under any standard, we need not decide that. And Juscic is a published case that takes exactly that route. And I think that route is perfectly acceptable in terms of dealing with the standard of review issue. What significance is it, if it's significant at all, that Mr. Williamson, the, I guess, manager of this facility, told them to take that bag with you when you leave? Absolutely, Your Honor. The government did argue below that Mr. Williamson, the facility manager, consented to the seizure and the search of the bag, which he unquestionably did. And the district court found, as a fact, that that consent was given. And that's in the record at volume 4, page 112. I'm sorry, say that again. Volume 4, page 112. The district court says, I'm sorry, Your Honor, I've given you the wrong page number. Let me find the right one. It's page 119. And the court says, Mr. Williamson, the employer, granted consent for the detective to look into the backpack. That is a fact that consent was granted. And based on that consent, he opened the backpack. So those are the facts as found by the district court. So Williamson consented not just to taking the backpack, but to opening it and looking at it? Absolutely. And Williamson's testimony below was that he wanted to know what was in the backpack, too. So he absolutely consented to Detective Lopez opening the backpack before it was unzipped. The government made the argument below, presented Mr. Williamson's testimony, that he was the person in charge of the warehouse. He had consent. In fact, there was. Did he have authority to do that? I mean, if you left something, a billfold with somebody, and you went out jogging, and you came back, and the other guys said, well, some co-worker wanted to know what was in your billfold. And I told them, yeah, you can look at it. Do you think that they would have that authority? Well, I think in the situation of a stranger or someone, well, that, your example brings to mind the cases, the case in which the – and I'm sorry, I'm trying to figure out which one it is. Regardless, where the defendant gave his property to a stranger in an airport, and the stranger in the airport called airport security and said, you can open it. And the court said, absolutely. He'd given it to the stranger. The stranger can open it. That's different than this case, certainly. There was evidence of a lot of that. Of course, that's different. But what about my example? If you gave your billfold to a co-worker and said, I'm going to go out jogging, and I got my sweatpants on, I don't have a pocket in them, I'll get my billfold when I get back. And then somebody else comes in and says, you know, I've been curious if he's got that letter I wrote to him, put it in his billfold. Would you mind if I looked and see if he's got that letter I wrote to him in his billfold? And the guy says, sure. Do you think that would be okay? I think under those facts, Your Honor, probably not. But I think the facts here were pretty significantly different. And the significant difference here is that the employee handbook, which was presented, which was put in as an exhibit and accepted into evidence at the hearing, contains a statement that the employer, PROPAC, has the right to search any bags that the employee brings in. And that's undisputed. That's undisputed. That is the policy here in this case. Yes. And how is that undisputed? I mean, is there a consent that they signed when they joined the PROPAC and became employees? That's absolutely right, Your Honor. And the consent said what? Well, there's an employee handbook, and both the handbook and Mr. Porter's signature on the handbook were submitted as exhibits. And I do not have the specific text of the consent in it, but the consent was that the employer had a right to inspect any bags that the employee brings in. Now, Mr. Williams, to be candid, I mean, his testimony was under ordinary circumstances, he would not go around consenting to opening employees' belongings. But obviously this circumstance was far from ordinary. You know, he came into work that morning, and the Denver police detective came in and said, can you get Aaron Porter in here? We've got a warrant for his arrest for shooting. And, you know, then we have on top of that the fact that once they go into the warehouse, they find the backpack not at Aaron Porter's workstation, but at a workstation 15 to 20 feet away. The person who works at that workstation is reluctant to positively identify the bag as Porter's. And, again, it's not even just the backpack. It's the backpack plus the fast food bag that the detective has seen him walk in on. So there's really no question that this is Porter's bag. So I think that under those circumstances, That's true, but why was it suspicious that he left his backpack with a co-worker? It's another way in which he's disassociating himself from this backpack. It's another way in which he is trying to just put as much distance between himself and this backpack as possible. So I think all those things put together show that for the plant manager, this was not an ordinary circumstance, and it would have been entirely within his authority to invoke this consent. Now, also to be clear, the district court did not rule on this basis, and we did not address it in our brief. I think it's certainly there in the record. These facts have been found, and Porter has disclaimed any challenge to the facts. If this is the route the court wants to go down, I think that's perfectly fine. I think, though, the abandonment in this case is so clear that there's really no reason for the court to work very hard to go much past, I don't have a backpack. So if the court has no other questions, I'm happy to. Well, I have another question. The testimony, I think, reflected that even if he had said that was his and they took it back to the police station, it would be inventoried. Is that of any significance? Well, I think that's significant to the alternative holding, the inevitable discovery slash inventory search holding. Obviously, this is a path that has a lot more moving parts than abandonment. I think it's a much more complex way to rule. There was a statement, I think, made by counsel that, well, they didn't have any written policy with respect to that. Have you looked at U.S. versus O'Neill? The case from just last week? Yes. Yes, Your Honor. And certainly the footnote in O'Neill makes the sort of best practices point that if there is a written policy, it ought to be admitted. But I think the thrust of O'Neill is that testimony regarding the policy is sufficient, and we had that testimony here from Detective Lopez that whether an item was seized as evidence or as personal property, and if it's taken to the station, it will be inventoried, and it will be inventoried to protect against potentially dangerous contents and to protect both the owner and the police department against either theft or meritless claims of theft of property. So, yes, I think either way it would have been inventoried. Thank you. Thank you. If the Court has no further questions, we'll ask that the district court be affirmed. Thank you. Your Honor, just briefly, I don't think my interpretation of the conversation is formalistic. It's based on ordinary meeting and how ordinary people would interpret this conversation. I think it's a very high bar to take a remark that someone gives in response to a question and say that means he doesn't want that item. It doesn't belong to him. And, again, I think that the statement here is much less clear than the statement in Denny. In Denny, the officer specifically asked, does this bag belong to you? And, again, I think it's absolutely disputed whether Williamson had actual or apparent authority to consent to the search of the bag, and that is why the district court took a rule on it. So I don't think that's available as an alternative grounds for affirmance. And I would point this Court to the district court. I actually don't have the record citation, but I'm happy to provide that in today's letter. And just briefly on this idea that the inventory exemption would be available to search the bag, that's absolutely wrong. The inventory exception does not allow the warrantless search of items seized for investigative purposes. This Court has even an item seized under the preview doctrine, you can only open it if you get a warrant. The inventory exception is not an end run around the warrant requirement, and if you adopt the government's reading, there's no more warrant requirement. I mean, every time you see something for briefly as, like, a tarry stop because of reasonable suspicion or, you know, as a full-blown seizure because it's in plain view and you have probable cause to believe in items in it, you don't have to get a warrant, you can just search it. And also, Officer Lopez testified that there was no policy permitting him to take items that were not on the person of the arrestee. So just for all of these reasons, the inventory exception is also not available to justify the search. I'm going to ask you to reverse the denial of evidence. Thank you. Thank you. I want to thank counsel for their arguments. Counsel are excused and we will submit our cases. And we are in recess until 8.30 tomorrow morning. Thank you.